IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LEON M. HEREFORD** | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 21-3922** |
| | : | |
| **BROOMALL OPERATING** | : | |
| **COMPANY LP, et al.** | : | |

| | | |
|---|---|---|
| **MICHAEL P LYNCH** | : | |
| *ADMINISTRATOR OF THE ESTATE OF* | : | |
| *JOHN J. LYNCH, SR., DECEASED* | : | |
| v. | : | **CIVIL ACTION NO. 21-3924** |
| | : | |
| **BROOMALL OPERATING** | : | |
| **COMPANY LP, ET AL.** | : | |

| | | |
|---|---|---|
| **ROCHELLE M JOHNSON** | : | |
| *ADMINISTRATRIX OF THE ESTATE OF* | : | |
| *DOROTHY P. JOHNSON, DECEASED* | : | |
| v. | : | **CIVIL ACTION NO. 21-3925** |
| | : | |
| **BROOMALL OPERATING** | : | |
| **COMPANY LP, ET AL.** | : | |

| | | |
|---|---|---|
| **PATRICK M. SMITH** | : | |
| *ADMINISTRATOR OF THE ESTATE OF* | : | |
| *JAMES A. SMITH JR., DECEASED* | : | |
| v. | : | **CIVIL ACTION NO. 21-3926** |
| | : | |
| **BROOMALL OPERATING** | : | |
| **COMPANY LP, ET AL.** | : | |

## MEMORANDUM

**McHUGH, J.**                                                                                       **December 9, 2021**

These actions, consolidated for pretrial purposes, arise out of injuries and fatalities related to the COVID-19 pandemic. Defendants, a nursing home and related entities, removed the cases

to federal court following a strategy apparently being followed by nursing homes across the country. They argue that federal jurisdiction exists on two grounds: the applicability of the Public Readiness and Emergency Preparedness Act (PREP) Act, 42 U.S.C. §247d-6d, and diversity of citizenship.

The Third Circuit's recent decision in *Estate of Maglioli v. Alliance HC Holdings LLC*, Nos. 20-2833, 20-2834, 2021 WL 4890189 at *12 (3d. Cir. Oct. 20, 2021) disposes of all but one of Defendants' arguments as to the existence of federal question jurisdiction. The remaining argument concerns diversity of citizenship, and the controlling question is whether individual providers participating in the residents' care are properly joined. Having considered the parties' numerous submissions and having heard argument at Defendants' request, I conclude that remand to state court is required.

**A. Factual and Procedural Background**

The complaints in these actions are virtually identical, raising claims of negligence and corporate negligence stemming from COVID-19 outbreaks at Broomall Rehabilitation and Nursing Center. Plaintiffs seek both compensatory and punitive damages. In addition to naming various business entities in the initial complaint, Plaintiffs make allegations against John Doe defendants, described as various medical providers including nurses. Pl.'s Complaint, ECF 1. In response to several motions to dismiss, the Plaintiffs filed amended complaints, specifically naming the nursing home's administrator, Vincent Rupert, and the director of nursing, Elizabeth Marasco-Kennedy, in place of the previously identified Doe defendants.[1] Amended Compl., ECF

---

[1] Defendants contest whether Plaintiffs were permitted to file an amended complaint as of right, but at oral argument conceded that by some means, the amended complaints would be properly before the court. *See* Transcript of Oral Argument, November 17, 2021 at 18.

11. Defendants in turn responded with an amended notice of removal, ECF 15, a motion to strike the amended complaint, ECF 16, and renewed motions to dismiss. ECF 18-21. Plaintiffs moved to remand. ECF 23.

**B. Discussion**

1) <u>Federal Question Jurisdiction</u>

In 2020, Congress passed the Public Readiness and Emergency Preparedness Act (PREP) Act, 42 U.S.C. §247d-6d. According to Defendants, the Act expressly and completely preempts state law and creates federal question jurisdiction over the common law tort claims at issue here. As these actions were pending, the Third Circuit issued its opinion in *Maglioli*, which I find controlling here. Consistent with the overwhelming majority of federal courts, the Third Circuit rejected Defendants' interpretation of the PREP Act. Beginning with the observation of that "there is no COVID-19 exception to federalism," it rejected the proposition that the Act generally preempted state tort law or gave rise to federal jurisdiction, and it recognized a willful misconduct claim created by the statute as the only claim it completely preempts. *Estate of Maglioli*, 2021 WL 4890189 at *1-2.

Specifically, the Court rejected an argument that the cases were subject to removal on the basis of 28 U.S.C. § 1442(a)(1), federal officer removal, because the nursing home and its employees were not "acting under" the United States or its officers. *Id.* at *5-6. Turning to federal preemption, The Third Circuit relied on the "exclusive federal cause of action" test to consider whether the PREP Act gave rise to federal jurisdiction through complete preemption. It concluded that removal was not proper because the statute had not wholly displaced state law. *Estate of Maglioli*, 2021 WL 4890189 at *7 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). It then considered whether the possibility of an affirmative defense under the PREP Act created

3

federal question jurisdiction pursuant to *Grable & Sons Metal Prod., Inc. v Darue Eng'g & Mfg.*, 546 U.S. 308 (2005) and concluded that the existence of such a defense would not suffice to support removal. *Estate of Maglioli*, 2021 WL 4890189 at *12. Finally, the *Magioli* court held that, although the PREP Act creates an exclusive federal cause of action, it only does so with respect to claims for "willful misconduct" arising from the use or administration of a covered countermeasure under 42 U.S.C. § 247d-6d(d)(1), as defined by the Act. Given that the Plaintiffs in *Magioli* alleged negligence, and not willful misconduct, the Circuit concluded that the Plaintiffs' "negligence claims do not fall within scope of the exclusive federal cause of action [and are therefore] not completely preempted, so they belong in state court." *Estate of Maglioli*, 2021 WL 4890189 at *7.

As a result of this sweeping analysis, the only issue remaining as to Defendant's first theory of jurisdiction is whether the actions at issue here are removable on the basis that the Plaintiffs have pleaded a claim for willful misconduct that falls within the exclusive scope of the statute. Willful misconduct under the PREP Act is a stringent standard. A Plaintiff must show "an act or omission that is taken—(i) intentionally to achieve a wrongful purpose; (ii) knowingly without legal or factual justification; and (iii) in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Id*. § 247d-6d(c)(1)(A). The Act clarifies that willful misconduct "shall be construed as establishing a standard for liability that is more stringent than a standard of negligence in any form or recklessness." *Id.* § 247d-6d(c)(1)(B).

In *Maglioli,* the Court reasoned that even if a plaintiff has not specifically pleaded a cause of action under the PREP Act, a court must still consider whether the factual allegations of the complaint can be fairly read to fall within the terms of the Act. *Estate of Maglioli*, 2021 WL

4

4890189 at *10.  Upon review of the complaint there, the Court of Appeals concluded that "nowhere in their complaints do the estates allege or imply that the nursing homes acted 'intentionally to achieve a wrongful purpose.' 42 U.S.C. § 247d-6d(c)(1)(A)(i).  Neither do they claim that the nursing homes acted 'knowingly without legal or factual justification.' *Id.* § 247d-6d(c)(1)(A)(ii)." *Id.*  The Court of Appeals made this finding despite the plaintiff having raised a claim for punitive damages, which required pleading conduct that was "grossly reckless, willful, and wanton" under the standard for punitive damages claims.  These cursory legal statements tied to the remedies sought fell short of the stringent statutory definition of willful misconduct under the PREP Act.  *Id.*

I have carefully reviewed the complaints here, focusing specifically on those paragraphs in the Amended Complaint to which Defendants seek to attach great significance.  Defendants argue that plaintiffs "specifically allege in the Amended Complaint that Defendants 'knowingly disregarded' and/or 'recklessly' disregarded various 'consequences' that 'created recklessly high' risks to patients" which satisfies the willful misconduct definition.[2]  Defendants' Response in Opposition to Remand, ECF 34.  It would be accurate to say that Plaintiffs here invoke such language repeatedly, and with a greater degree of rhetorical flourish than in *Maglioli*.  Nonetheless, even with such language in the Complaint, like the Third Circuit in *Maglioli,* I do not see where

---

[2] At oral argument, Defendants directed the Court's attention to Plaintiff's request for punitive damages, in addition to paragraphs 31, 33, and 34 of the Amended Complaint which read, "Defendants recklessly and/or negligently disregarded the consequences of their actions, and caused staffing levels at their facility to be set at a level such that the personnel on duty at any given time could not reasonably tend to the needs of their assigned residents. Defendants knowingly established staffing levels that created recklessly high resident to staff ratios, including high resident to nurse ratios. Defendants knowingly disregarded resident acuity levels while making staffing decisions, and also knowingly disregarded the minimum time required by the staff to perform essential day-to-day functions and treatments." Amended Compl. ¶¶31, 33, 34.  When asked at oral argument which allegations meet the heightened standard of "wrongful purpose," Defendant's attorney cited the above paragraphs. Transcript of Oral Argument at 11, 13.

5

any of the Plaintiffs have pleaded that Broomall acted "knowingly without legal or factual justification" and with an intent "to achieve a wrongful purpose," as required under the PREP Act. The intent requirement requires a degree requires a level of culpability that far exceeds traditional tort standards. In that regard, I attach significance to the threshold for punitive damages under New Jersey law, which governed *Maglioli*. Under New Jersey law, to award punitive damages, a jury must find one of two elements: either that the defendants' conduct was "malicious," defined as "intentional wrongdoing in the sense of an evil-minded act," or that the defendant's conduct was "willful or wanton," defined as a "deliberate act or omission with knowledge of a high degree of probability of harm to another who foreseeably might be harmed by that act or omission in reckless indifference to the consequence." New Jersey Standard Civil Jury Charge 8.60. Given that rigorous standard,[3] if the punitive damages pleaded in *Maglioli* did not qualify as willful misconduct under the statutory definition in the PREP Act, I cannot conclude that Plaintiffs' allegations here fall within the Act.

In summary, given the clear, recent guidance provided by the Court of Appeals, Defendants' attempt to invoke federal question jurisdiction fails.

2) <u>Diversity Jurisdiction</u>

To establish federal subject matter jurisdiction based on diversity jurisdiction, the jurisdictional amount must be met and the opposing parties must be completely diverse. 28 U.S.C. § 1332(a). Here, the question is whether Plaintiffs' amended complaint which names individual, non-diverse defendants, and thereby defeats diversity jurisdiction, is proper, or should instead be deemed an instance of fraudulent joinder. I note at the outset that in determining whether diversity

---

[3] Pennsylvania's statutory standard for health care providers is similar. 40 P.S. § 1303.505.

exists, Plaintiffs' inclusion of Doe defendants in their original complaints carries no weight pursuant to Congress's amendment of the removal statute in 2011. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded"). [4]

Both parties cite a Fifth Circuit case, *Hensgens v. Deere & Co,* 833 F.2d 1179 (5th Cir 1987), as establishing the applicable standard for evaluating amendments that would have the effect of destroying diversity. *Hensgens* sets forth four factors: (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for the amendment; (3) whether plaintiff will be significantly injured if an amendment is not allowed; and (4) any other equitable reasons. *Id*. at 1182. In the absence of any controlling standard from the Third Circuit, [5] and in view of the parties' embrace of *Hensgens,* I will address the issue using its framework, but I will apply its factors mindful of other binding precedent.

The first factor is "purpose." It is important to note that the plaintiffs' strategic purpose is not relevant because the Supreme Court has long held that "in a removal proceeding the motive of a plaintiff joining defendants is immaterial, provided there is in good faith a cause of action against those joined." *Mecom v. Fitzsimmons Drilling Co.,* 284 U.S. 183, 189 (1931). As the Third Circuit

---

[4] The individual non-diverse defendants need not be indispensable parties. In practical terms, the Third Circuit's decision in in *Steel Valley Authority v. Union Switch and Signal Division*, 809 F.2d 106 (3d Cir. 1987), has been superseded by statute as stated in *Siller v. Community Educ. Centers, Inc*. No. 14-5019, 2014 WL 4931291 (E.D.Pa. Oct. 2, 2014). Consequently, the issue is no longer whether the individual defendants are "indispensable parties," but whether they are properly joined by amendment.

[5] The Third Circuit has not established a test, although a non-precedential panel applied *Hensgens*. *Hayden v. Westfield Ins, Co.,* 586 F. App'x 835, 839-41 (3d Cir. 2014), and district courts in this circuit have relied upon it. *See In re Diet Drugs*, 2002 U.S. Dist. Lexis 25285, at *30 (E.D.Pa. Dec. 17, 2002); *Kahlan v. Mass. Cas. Ins. Co.* No 01-1128, 2001 WL 1454063 at *2 (E.D. Pa. Nov. 14, 2001).

has also held, even a specific intent to avoid federal jurisdiction does not matter: "The fact that the plaintiffs' motive for joining a [nondiverse] defendant is to defeat diversity is not considered indicative of fraudulent joinder." *Abels v. State Farm Fire and Casualty Co.,* 770 F.2d 26, 32 (3d Cir. 1985) (Higginbotham, J.). Consequently, Defendants' emphasis on Plaintiffs' "subjective intention" in joining the individual providers is misplaced. Defendants' Response in Opposition to Remand, ECF 34 at 8.

Rather, as *Mecom* held, and subsequent circuit decisions have reinforced, the question is whether there is a good faith legal basis upon which to assert a claim against the defendants joined. The Third Circuit has cautioned that fraudulent joinder "should not be invoked lightly" because the "removal statutes are to be strictly construed against removal." *In re Briscoe,* 448 F.3d 201, 215-16 (3d Cir. 2006). The question is not whether claims against the defendants joined lack merit, but whether they are "wholly insubstantial and frivolous." *Id*. at 218. Joinder may also be deemed fraudulent if there is "no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Abels,* 770 F.2d at 32. In either case, there is "a heavy burden of persuasion" on the removing party. *Briscoe,* 448 F.3d at 217.

The individual defendants named in the amended complaint include the administrator of the nursing home and the director of nursing. Nursing home administrators are licensed professionals in Pennsylvania, governed by Standards of Professional Practice and Professional Conduct promulgated by a state board. 49 Pa. Code § 3991. Among other things, an administrator must "[d]evelop policies which govern the continuing care and related medical and other services provided by the facility which reflect the facility's philosophy to provide a high level of resident care and a healthy, safe and comfortable environment." §3991(1)(i). An administrator must also "[e]valuate the quality of resident care and efficiency of services, identify strengths and

weaknesses in setting place measures for improvement where necessary, and evaluate progress and institute appropriate follow-up activities." §3991(1)(ii). This includes a responsibility to "[s]et in place a functional table of organization with standards of accountability in whole department has accountable for the performance of their respective departments." §3991 (1) (iii). Given these responsibilities, a good faith basis for joining the administrator is self-evident.

Separate provisions of the Pennsylvania Code address the responsibilities of a director of nursing at facilities such as Broomall. First, the Code requires the appointment of a full-time director of nursing services who shall be a "qualified licensed registered nurse." 28 Pa Code §211.12 (b). The Code specifically charges the director of nursing with responsibility for standards of accepted nursing practice, nursing policy and procedure manuals, methods for coordination of nursing services with other resident services, and general supervision. The nursing director also provides guidance and assistance to assure that preventive measures, treatments and other health services prescribed are properly carried out. §211.12(d). Once again, given these responsibilities, a good faith basis for joining the director of nursing is equally self-evident.

Defendants have submitted an affidavit from the director of nursing, Elizabeth Marasco-Kennedy, representing that she was not employed at Broomall during the relevant time frame. Motion to Dismiss Plaintiff's Amended Complaint, ECF 32-1, Exhibit 1. Plaintiffs respond in kind that even if that proves to be true, policies and procedures she instituted during her tenure would have remained in effect and relevant later.[6] Plaintiff's Sur-Reply, ECF 49, at 2. The Third Circuit has cautioned that a district court must take care not to step away "from the threshold jurisdictional issue into a decision on the merits." *Boyer v. Snap-On Tools Corp*, 913 F 2d 108,

---

[6] Specifically, Plaintiffs plead that the Infection Prevention Manual and the Hand Hygiene Policy, which Ms. Marasco-Kennedy would have been responsible for reviewing and enforcing, were used during the COVID-19 pandemic.

9

122 (3d Cir. 1990); *accord Briscoe,* 448 F.3d at 219. [7] To consider the import of the affidavit necessarily involves an inquiry into the merits. *Neiman v. Apple, Inc.* No. 21-2028, 2021 W.L. 2823078 at *2 (E.D. Pa. July 6, 2021). And even if I were to presume to reach the merits of Nurse Marasco-Kennedy's involvement, and decide that issue in Defendants' favor, the home administrator would nonetheless remain a defendant whose presence would defeat diversity.

Defendants further argue that Plaintiffs have no need to join these individual defendants because liability insurance for the institution will suffice to satisfy any judgment. But a defendant does not have the right to dictate the manner in which a plaintiff litigates the case. As the Supreme Court has recognized in the related area of federal preemption, a plaintiff remains master of his complaint, and can make choices accordingly. *Caterpillar Inc. v. Williams* 482 U.S. 386, 393 (1987).

Nor can I conclude at this point that Plaintiffs have no intention of pursuing a judgment against the individual defendants. As I have previously noted, a desire to hold someone personally accountable for their actions can affect decisions about whom to sue. *Chaborek v. Allstate Financial Services, LLC.,* 254 F. Supp. 3d 748, 753 (E.D. Pa. 2017). There are also sound practical reasons for naming individual caregivers in professional negligence actions, as they may have their own separate liability coverage, providing another source for potential satisfaction of a judgement. If these cases were to proceed to judgment in favor of the estates, any prediction now as to where the four representatives might ultimately seek payment of such a judgment is mere speculation.

---

[7] At oral argument, Defendants referenced *Barker v. Tyson Foods, Inc.*, No. 21-223, 2021 WL 5184074 at *3 (E.D. Pa. Nov. 4, 2021) as supporting a deeper inquiry into the merits here. I disagree. In *Barker*, in a transparent effort to defeat the well-established immunity of an employer under the Workers Compensation Act, the plaintiffs named as defendants non-diverse entities unrelated to the case. The Court's inquiry into the merits did not go beyond taking judicial notice of public records disclosing their corporate lineage.

10

And, as discussed below, when individuals are parties to a case, there are potential implications for the development of the record as well. The argument that a plaintiff does not "need" a defendant to recover in a case falls far short of establishing that the plaintiff has no intention to pursue that defendant. *Cf. Stewart v. Ethicon, Inc.*, No. 19-4776, 2020 W.L. 1330713 at *5-6 (E.D. Pa 2020) (McHugh J.) (joinder was fraudulent where plaintiff sued defendant under legal theory filed previously rejected as a matter of law, before the same state court judge, and pursued no appeal following either dismissal).

Turning to the second factor, whether Plaintiffs have been dilatory, the defense arguments are weak. Plaintiffs signaled their clear intention to include individual health care providers in these cases by naming Doe defendants in the initial Complaint. ECF 1. These actions were removed on September 1, 2021, *Id.*, and the Amended Complaints identifying individual defendants were filed on September 17th. ECF 11[8]. Plaintiffs are correct that patient charts do not typically identify the administrator of a home or supervisory personnel such as the director of nursing, and it was therefore reasonable for Plaintiff to name Doe defendants with the intention of amending the Complaints as discovery revealed the identities of individual practitioners. Plaintiff's Response in Opp. To Remand, ECF 22 at 16-17. Viewed from one perspective, Plaintiffs' counsel acted responsibly by not simply naming a host of nursing home staff as defendants, instead waiting until specific, relevant individuals were identified. Defendants' arguments principally center on alternative ways counsel might have identified these individuals before filing suit, Def.s' Reply Brief, ECF 29 at 4, but the relevant inquiry is timeliness. By any

---

[8] In Civil Action 21-3925, the amended complaint was filed slightly later, on 9/27/2021.

measure, the amendments were prompt, and because amendment occurred at the very outset of the case in no respect have Defendants been prejudiced.

The third *Hensgens* factor is whether Plaintiffs will be prejudiced if amendment is denied. Once again, the defense focuses on whether Plaintiffs can prevail without the individual defendants as parties. But prejudice must be evaluated more broadly. Although compensation is certainly the principal purpose of a civil damages suit, in cases where a family member has been lost because of alleged negligence, the plaintiff's desire to pursue accountability may be a separate consideration. *See Chaborek,* 254 F. Supp. 3d at 753. Here, counsel for Plaintiffs has represented that the claims against the individual providers will not be dropped but pursued in state court.[9] Plaintiff's Motion to Remand, ECF 23, at 19. The waste and inefficiency of such parallel litigation is self-evident. But even as to this federal action, there are consequences if joinder is denied. As noted above, there are potential implications for insurance coverage. Moreover, as I have previously noted, "[p]ersonal involvement as a party may have an impact upon how forthcoming a witness is as to the potential involvement of others. In some cases when an individual party is named as a defendant, he or she retains separate counsel, and the advice given by such counsel may differ dramatically, particularly where the individual's employer is also a defendant." *Chaborek,* 254 F. Supp. 3d at 753. In that sense, there is some inherent degree of prejudice that results when plaintiffs are deprived of the options conferred by being "master" of their complaints, free to litigate cases as they see fit.

The final *Hensgens factor* directs the Court to consider "equitable" considerations. Both sides paint with a broad brush. Plaintiffs focus on a lack of prejudice to Defendants, given that the

---

[9] Defendants' initial position assumed that such parallel claims would be barred by immunity under the PREP Act. *Maglioli* has since rejected that defense, providing no safe harbor against separate state litigation naming the individual health care providers.

amendment comes at the inception of the case with a full opportunity to litigate. Defendants offer the same proposition in reverse – asserting a lack of prejudice to Plaintiffs because they can potentially be compensated by Broomall alone. These arguments cancel each other out.

There is, however, a relevant consideration not addressed by either party. Although in the absence of the individual defendants, complete diversity may technically exist, it is only because of the complex, multi-state ownership structure of Broomall Operating Company. A review of publicly available databases confirms what the record otherwise suggests: that Broomall operates from a single location in Delaware County, Pennsylvania.[10] There is nothing inequitable in Broomall having to defend itself in the county where, in "real world" terms, it provided the care that gave rise to these actions.

**C. Conclusion**

Defendants' Motions to Strike the Amended Complaint will be denied, and Plaintiffs' Motions to Remand will be granted. An appropriate order follows.

/s/ Gerald Austin McHugh
United States District Judge

---

[10] A search of Broomall Operating Company in two databases, Mergent Intellect and D&B Duns Market Identifiers, reveals that the company's sole operating location is in Broomall, Pennsylvania.